I'd like to reserve two minutes for rebuttal, if I might, Your Honor. I'm here this morning to represent Jose Alberni and his appeal. This is a case where the state of Nevada's case against Mr. Alberni was so weak that even in rebuttal, they had to resort to propensity evidence to sustain any sort of case. That rebuttal evidence, through a witness called Sean Flam, highlights the two constitutional issues that I'm bringing before the Court this morning. The first one deals with the problem that Mr. Alberni's defense counsel had with that witness, Mr. Flam. His problem was that he had represented Mr. Flam twice before, and that Mr. Flam was on parole from one of those cases, and had been convicted of a felony in one of those cases, same case. This created a major problem for Mr. Buchanan. To his credit, he stood up in court and said to the Court straight out, Your Honor, I can't do cross of this matter. It's not right. I have loyalty to my client. Unfortunately, the Court, instead of doing what we believe it was supposed to do And he was referring to the witness. Yes, Your Honor. Okay. The Court, instead of doing what we believe he was supposed to do, the judge, under Holloway and Glasser – Glasser, if I'm pronouncing it correctly – we believe what the Court should have done is have a mini-hearing at that point where not only Mr. Flam, the witness's rights would have been properly reviewed, but also Mr. Alberni's rights would have been reviewed, and a reasonable decision made as to whether Mr. Buchanan could continue. As part of that process, the Court owed Mr. Buchanan deference on that. He's an officer to the Court, and under Holloway and Glasser, it's very clear that when a lawyer stands up and says, I have a problem, he's owed deference. He could be wrong, of course. He's not infallible. But he was owed deference. He did not get any deference from this trial judge. Zero. With all due respect to the trial court, what we believe was going on here is that the judge wanted to move this case on understandably. We understand judicial economy and we understand time. But in doing that, he rode over, roughshod, Mr. Alberni's rights in this matter and his right to a lawyer who was not pulling his punches. Mr. Buchanan was pulling his punches on cross. He did a decent cross on the one issue that was sort of involved with Mr. Flam, but where he failed really dramatically. He never brought out for the jury that Flam was a convicted felon. He had a right to do that under Nevada law, and that's very, very important. Jurors know what felons are, and they needed to know that this man was a convicted felon. They never knew that. They also had a right to know that this man was on parole. That was an immediate, continuing relationship that he had with the State of Nevada. Let me ask you a legal question. I'm troubled by the evidence that you laid out in your brief, but I'm trying to resolve a legal question, and that is where Estelle basically leaves out in a footnote and said the Supreme Court's not going to yet decide whether this propensity evidence is a violation of due process. But then in later cases, of course, in the lower courts, it's at least been alluded that it may be a due process violation. So where does that leave us under the AEDPA standards? Yes, Your Honor. I think our position on that is that this Court under AEDPA is entitled to look to what we call, what are called general principles, basically general due process principles. Admittedly, there's no bright-line rule from the U.S. Supreme Court, as Your Honor just noted, but there obviously are lots of cases dealing with fair trials under due process. And I believe what this Court did, particularly in McKinney, for example, is after Estelle v. McGuire came down, this Court looked at the case and looked at the law and decided that under due process principles, interestingly, Gideon is cited in that case. I think Gideon was cited by the appellant there. But under general due process principles, this Court, I think, is entitled to conclude that the clearly established Federal law is that you get a fair trial and that if there's some evidentiary issue that is dramatically overreaching and dramatically unfair, that that can be a Federal due process violation beyond State law. And I think that's what this Court did in McKinney. It's also what there's a district court opinion I cited. I think its title is Sims. It's Judge Wood from, I believe, Southern District in New York, I believe. And Judge Wood looked at this very closely. And I think her opinion is appropriate in this context also. And I think she concluded that there are general principles that do apply. This Court, of course, in Robinson v. Ignatius, in, I believe, March of 2004, I believe the case came down, or March of 2005, excuse me, it held and expressed its willingness to apply general due process principles in areas that were, that had not had a right-line rule. And I would say that the Supreme Court, even though it deferred in that footnote from reaching any conclusion, it did not say that in any way that it would not find that that was a due process violation if irrelevant evidence was, irrelevant propensity evidence was piled on. And that is clearly what happened here. The evidence here, of course, was totally irrelevant. I'd like to make one point, is that the defense never, never, as far as I can tell in this record, never argued that Mr. Alberni was unfamiliar with firearms. Never made that argument at all. That argument is created by the State courts in order to justify their rulings. And it's created, sort of adopted by the U.S. District Court. It's a, it's, it's an easy flow from defending it that it's an accident, but it's not, it's not relevant evidence. When you, I think we all know, and unfortunately some recent events highlight this, that you can, you can have an accident with a firearm, but be very familiar with firearms. It happens, unfortunately, quite often, I think. And, and our client was entitled to defend this as an accident. But he never argued unfamiliarity with firearms. That's, that's a created defense to then say you can put on evidence of knowledge. But he never said he didn't have knowledge. And that really is the grounding for this whole State's case, which I say is a house of cards. Eighty percent of it is irrelevant propensity evidence. They piled on this man over and over again. Not surprisingly, the jury went with them. We say that's unconstitutional and that this Court should reverse on that basis. But we also say it should certainly reverse on the conflict law basis. This man was entitled to have a proper evaluation. He, they never even asked his opinion on, on his rights to, to an independent lawyer. They never consulted with him. They ignored him. That's wrong. This man's rights were violated twice in this case. And both those issues are now before the Court. But I'd be happy to, that's our basic position on this case in, in a nutshell, Your Honor. Thank you. Thank you very much. May it please the Court. My name is John Warwick. I'm a Deputy Attorney General with the State of Nevada, here representing the appellees. The two main issues that we're looking at, the first one that was addressed by Mr. Turner regarding, regarding the prior bad acts, it's our position that these are matters for state law review, that they're state evidentiary issues. For example, you've got the, the testimony of Shane Shaw regarding Albernie's prior use of firearms. The, the state courts found that it was relevant, it was probative, and to allow that in is a matter of state law. The, there was an objection to that particular bit of evidence. Why was that, why was that admissible? To show what? It was allowed to show. As part of the prosecution's case in chief. It was allowed to, not to show guilt, but to show his knowledge of firearms. And that was. Was that in anticipation of any defense? I believe so, Your Honor. And that's. Which defense? That would be the defense that it was an accident. And as Mr. Turner alluded to, our vice president might have a chance to discuss this at some point, or at least the press will have a chance to make light of it. And that's found in the excerpt of the record at page 80. And the, the court at that time provided a curative instruction that the statement could not be used to show guilt, but once again, to show knowledge of the firearms. The Nevada Supreme Court ruled that that was admissible under NRS 40.045. And once again, that's a matter of state law. Now, that was one of the prior bad acts that was objected to by defense counsel. There were some other prior bad acts that it, it appears that the defense counsel chose not to raise objections to. The viewing of a dead body, that testimony by Connie Shaw. The, there was a comment by W. Sean Flam after the resolution of the, the conflict issue by the court regarding the, the pistol whipping. You remember that Mr. Flam, he's a rebuttal witness. It's not the case in chief. And the case in chief was strong. If you review the transcript, you'll see that Mr. Albarni made statements saying that he was going to put a bullet in the head of the victim, Dennis McElroy. And that's what he did. So it's not a leaking case. It's based solely upon innuendo or just propensity evidence that was, that created a house of cards, as Mr. Turner referred to. In regards to the prosecutorial misconduct issue that's been raised in this case, everything that the prosecution did is consistent with Darden v. Rain, Rain, Rainwright, excuse me. The prosecution argued about the evidence, and they're allowed to do that. They're allowed to comment on evidence such as that Mr. Albarni was a person who would shoot a gun out of a car, that Mr. Albarni, you know, was a person who was involved with activities. One of the witnesses in the case, I think it was Connie Shaw, she said that some of these guys palled around. Well, the palling around together was a dangerous and a violent lifestyle, and unfortunately some of them died because of this. Now, in regards to the second issue, though, second issue that was certified for appeal, the Nevada Supreme Court's conclusion that the defendant's Sixth Amendment rights were not violated is not unreasonable, and it's not contrary to a United States Supreme Court decision. What we're looking at is the timeline as to the representation. You've got this attorney, Mr. Buchanan, who represents Mr. Flam. His representation is concluded for the trial of Mr. Albarni. And as Mr. Turner outlined, during the chronology of the case at one point, Mr. Albarni testifies. Mr. Flam is called as a rebuttal witness. And the main thrust of the purpose of that testimony was because Mr. Albarni had testified that he had not pistol-whipped someone, and Mr. Flam was there to say, well, yes, he did pistol-whip him. That would be, let's see. And the trial itself took place in May of 1996. Flam's probation was revoked, I believe it was September 18, 1995. So the representation had concluded. So when, during the trial, Mr. Buchanan raised the issue, the court excused the jury, they were gone. They held a hearing. And the court inquired as to what was going on as to the representation. The court found it wasn't current. It felt that, and correctly so, that it's the witness who holds the privilege. In this case, the witness is Flam. And our position is that the holding in Parton is controlling as to that aspect. The Nevada Supreme Court in its findings in this matter, except to the record page 193, felt that the defense had little to gain by asking about Flam's conviction. Now, you've got a situation where Albarni's prior testimony, I think his testimony took place during the same day, laid out the facts relating to Mr. Albarni and Mr. Flam's being arrested together. This is in Excerpt 44. I'm sorry, not Excerpt, but Exhibit 44 from pages 193 to 198. It lays out what had gone on during that day that led Flam to be arrested and eventually represented by Buchanan. Now, that information was all provided to the jury. The jury was well aware of what these people were up to, using meth, selling marijuana, showing off with guns, et cetera. So based upon that, Mr. Buchanan, who no longer has a duty to Mr. Flam, his cross-examination at that point was perfectly acceptable and adequate because what he went to go after was the reason the prosecution called him. Mr. Flam was called to rebut the pistol-whipping testimony that Mr. Albarni had made earlier in his testimony. So if that's the reason the prosecution calls him and then Mr. Buchanan cross-examines him, he, I believe, was perfectly at least adequate in that respect to limit that to more of the pistol-whipping than to go into and rehashing in front of the jury the whole sort of detail of the histories and lifestyles of this cast of characters. Isn't credibility always an issue that one needs to confront in a situation like this? And if this witness were shown to be incredible, wouldn't that? But the Madison court felt that the jury already had that information about the credibility. But they didn't know about the felony conviction. That is correct, Your Honor. But they did – the court felt that they had sufficient information, I believe. In other words, if the defense would not have been able to do much in addition to damage the credibility, then it had already been done. Does the Court have any further questions? Suppose that I disagree with you that there was no duty to protect the interests of the defendant, the conflict-free interests of the defendant. Was the defendant in this case prejudiced by assuming that I'm correct that there was error in not getting a waiver from the defendant? In this case, I don't believe that there was prejudice because the lower court found that – or the state court found that there was overwhelming evidence of the guilt. And once again, this is a small piece of the overall picture of this case. This is just one witness called in rebuttal. Mr. Flamm's entire testimony amounts to just a few pages of a trial transcript that goes on for hundreds of pages. So when you look at all the other evidence, you've got, you know, the driver of the car who is sitting next to the victim when he's shot, and you've got Mr. Alberni in the backseat who, you know, Mr. Alberni's story was that it was an accident, even though earlier he, you know, expressed anger about the victim and said that he wanted to put a bullet in his head. Well, Mr. Alberni finally did that. And as I've said before, you know, the small amount of information that came in from Mr. Flamm was rebuttal to almost a collateral issue, and the case in chief was strong enough, more than strong enough, to support a conviction. Does the Court have anything further? Thank you very much for your argument. Judge Alito, I don't believe respectfully that you need to show prejudice in a Holloway And Mickens v. Taylor, which obviously came after later, I realize that. But on page 1245 of the Mickens opinion, at 122 Supreme Court, at 1245, Justice Scalia, writing that opinion, said, Since this was not a case in which, parenthesis, as in Holloway, counsel protested his inability simultaneously to represent multiple defendants. And then he goes on to say, It was at least necessary for Petitioner to establish that the conflict adversely affected his counsel's performance. I think where you've got a complete breakdown in the process, where you don't have the proper review of the issue, like Holloway and Glaser, I don't think you have to prove any adverse effect. We believe there was adverse effect, obviously, and we, because of what we've talked about, the no mention of the felony. There was some suggestion he was involved with drugs, but it was never clear in the record whether he was involved in selling drugs, Mr. Flam, using drugs. It was very ambiguous as to his involvement. And this Court recently in Lewis v. Mayo was very exacting in its review of cross-examination. And in that case, the attorney did a fabulous job of crossing as to events that occurred some time back, but he totally dropped the ball on the recent event, the DUI. Here, the recent event is parole. This man was on parole sitting in that witness chair, and we believe he should have been crossed on that and obviously on the felony conviction. I would – my last brief that I filed, for some reason, the court, the clerk's office concluded initially that it was untimely, and I filed a motion on that. We have that, and that brief is deemed filed. We appreciate that, Your Honor. I just wanted to mention the Parton case. To me, it stands for just what I'm arguing, namely, that there should have been an adequate and proper review. In Parton, this Court spends about three or four pages reviewing the case from the perspective of the defendant. Only after doing that does it go and look at the perspective of the witness. Obviously, you've got to look at both. Here, only it was a partial. And frankly, I think it was a – I don't want to use the word brow-beating, but it was pretty close to a brow-beating by the court to get even the witness to admit that he didn't have any rights. Nobody ever explained to the witness what his rights were. Just said you don't have a conflict of interest. If that's a waiver, I don't get that. I don't see that as a waiver. One thing I didn't mention was limiting instructions. There's one in this whole case. But as I noted in my brief, there's a gap in this trial, a full day where nothing happened, and the gun matter at Prim, Nevada, on the State line, the gun matter came up early, ultimately a limiting instruction. Two days later, it comes up again, no limiting instruction. This is a failure, I think, of the court, again, to properly protect the defendant's rights. If there aren't any other questions, I'll sit down. Thank you very much. Thank you very much. Thank both counsel for your arguments. Very helpful. And the case of Alberni v. McDaniel is submitted. We're adjourned for the morning. Thank you.
judges: Alarcon, McKeown, Holland